UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

STONEX MARKETS LLC
f/k/a INTL FCSTONE MARKETS, LLC,

     Plaintiff,

v.

CUARTE SL,

     Defendant.

Docket No. _____

---

StoneX Markets LLC f/k/a INTL FCStone Markets, LLC ("StoneX"), by and through its attorneys, Barnes & Thornburg LLP, hereby alleges for its complaint against Cuarte SL (hereinafter referred to as "Defendant" or "Cuarte"), upon personal knowledge as to matters relating to itself and upon information and belief as to the remaining allegations, as follows:

## NATURE OF THE ACTION

1.     StoneX brings this Complaint to enforce its written agreement with Cuarte and seeks entry of a judgment in favor StoneX and against Cuarte for damages caused by Cuarte's breach of the parties' agreement, plus pre-judgement interest, reasonable attorneys' fees and costs.

2.     Cuarte and StoneX entered into the "Terms of Business" agreement for swaps and over-the-counter ("OTC") derivatives (the "Agreement") dated January 15, 2016, a true and correct copy of which is attached hereto as Exhibit A and incorporated herein by reference.

3.     Under the terms of the Agreement, Cuarte could execute trades in swaps, including foreign exchange swaps and foreign exchange forwards through StoneX, which provides OTC derivatives trading services to individuals and entities, among other services.

4.      The Agreement, *inter alia*, required Cuarte to make certain margin payments to StoneX and to maintain certain margin levels, as determined solely by StoneX, as security for Cuarte's financial obligations and to mitigate against the risks associated with Cuarte's positions, including daily variation margin payments to secure its transactions.

5.      For context, in such situations, if a particular trading position declines in value, StoneX will issue a "margin call" which is a demand that the counterparty take action to reduce the risk associated with its positions by depositing additional funds, entering into risk reduction orders, liquidation of its positions, or a combination of the same, to cover risks and potential risks associated with the positions, including potential trading losses resulting from liquidation.

6.      The counterparty is sent confirmations and statements which, among other items, delineate the net liquidating value of the positions maintained by the counterparty, as well as the margin necessary to maintain those positions.

7.      The failure of a counterparty to meet its financial obligations, including maintaining the necessary levels of margin, constitutes an event of default and the positions can be liquidated to mitigate damages and protect the other party, which is ultimately responsible for any losses incurred by the counterparty's positions.

8.      Due to significant market volatility, Cuarte's positions suffered a decline in value in early March 2022.

9.      Per the terms of the Agreement, on March 1, 2022, StoneX made a $224,531.22 margin call to Cuarte, which Cuarte did not timely honor.

10.      By March 4, 2022, Cuarte's margin deficit grew to over $6,000,000.00 as a result of its failure to maintain the required margin levels and its breach of the Agreement.

11.     Cuarte was aware of its financial obligations and default; Cuarte had funds with which to satisfy the margin calls, but failed to do so.

12.     Instead, Cuarte submitted $1,500,000.00 towards its margin call of $6,129,018.48 on or about March 7, 2022, with was significantly less than the amount it owed.

13.     Cuarte never timely met its margin calls and failed to remit any further payment after March 7, 2022.

14.     StoneX notified Cuarte that StoneX would liquidate Cuarte's positions on March 7, 2022, as a result of its breach of the Agreement and failure to satisfy its financial obligations.

15.     Cuarte could have taken steps to meet its financial obligations under the Agreement — including by self-liquidating, entering risk-reducing orders, submitting additional funds, or a combination of the same.

16.     In other words, Cuarte did not need solely to submit additional funds to meet its financial obligations and to cure its default.

17.     Instead, Cuarte had a number of tools at its disposal to reduce the risk associated with its positions (and, attendant to that, the risk it was requiring StoneX to bear) and margin obligations.

18.     Cuarte chose not to use these tools.

19.     Instead, Cuarte left StoneX with the risk, in volatile markets.

20.     Because Cuarte failed to meet its financial obligations under the Agreement, StoneX liquidated the positions in order to mitigate damages and to protect itself.

21.     The additional funds submitted by Cuarte to StoneX on or about March 7, 2022, and the funds derived from liquidation, were insufficient to make StoneX whole.

22.     In fact, after liquidation, Cuarte still owed StoneX over $3.72 million to cover StoneX's losses caused by Cuarte's default and breach of the Agreement.

23.     Prior to initiating this lawsuit, StoneX attempted to elicit Cuarte's compliance with its financial obligations under the Agreement, but Cuarte elected not to meet those obligations.

24.     StoneX served a demand upon Cuarte on March 25, 2022 for the unpaid $3.72 million debt which it owes to StoneX.[1]

25.     Cuarte never met the demand nor has Cuarte paid its debt, which remains due and owing to StoneX.

26.     Instead, ignoring that there were a number of tools available to Cuarte which it could have used to satisfy the margin calls other than simply remitting funds, and that the margin calls originated on or about March 1, 2022, Cuarte indicated that it would have met the margin call on March 7, 2022, but there was a holiday and banks were closed.

27.     StoneX has been damaged as a result of the breach of the Agreement by Cuarte and is entitled to monetary damages, plus pre-judgment interest, reasonable attorney's fees and costs, under the terms of the Agreement.

28.     StoneX brings this action to enforce its Agreement with Cuarte and to recover the debt owed by Cuarte to StoneX under the Agreement and obtain a declaration regarding its certain of its rights under the Agreement as the non-breaching party.

## PARTIES

29.     StoneX is an Iowa limited liability company, which maintains its principal place of business in Chicago, Illinois, and offices in New York, New York and elsewhere, that specializes

---

[1] Subsequent to the demand, one of the call spread positions expired and approximately $850,830 has been applied to the debt due and owing to StoneX from Cuarte, leaving an outstanding debt due and owing to StoneX in the amount of approximately $2,869,170.

in trading financial products in various over-the-counter and exchange-traded derivatives markets. FCStone Group, Inc., a Delaware corporation with its principal place of business in New York, New York, is the sole member of StoneX and also maintains offices in New York, New York.

30.     Upon information and belief, Cuarte is a Spanish corporation and entity which is owned by Grupo Jorge, headquartered in or about Zaragoza, Spain.

## JURISDICTION & VENUE

31.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1332(a)(2). StoneX is a citizen of Delaware and New York; Cuarte is a citizen or subject of Spain, a foreign state; and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

32.     Venue is proper in this district pursuant to Section 8.6 of the Agreement, which states that "[a]ny judicial action arising out of, resulting from or in any way relating to this Agreement . . . shall be brought only in a state or federal court of competent jurisdiction located in the state of New York, in the Borough of Manhattan in New York City."

33.     Venue is also proper in accordance with 28 U.S.C. § 1391(b) in that a substantial part of the Agreement was performed or events, omissions and transactions giving rise to the claims occurred within New York, New York.

## FACTUAL BACKGROUND

34.     Cuarte, upon information and belief, is a family-run pork producer owned by Grupo Jorge, one of the largest exporters of pork in Spain, and has an estimated net worth of $157 million.

35.     On or about January 15, 2016, Cuarte and StoneX entered into the Agreement, which "govern[ed] each transaction defined by the [Commodity Exchange Act] as a 'swap,' including any 'foreign exchange swap' and 'foreign exchange forward.'" *See* Ex. A at §1.1.

36.     Pursuant to the Agreement, Cuarte is required to make and maintain certain margin levels, or good faith deposits, in amounts determined and required by StoneX, to secure its positions, known as margin payments.

37.     The Agreement sets out Cuarte's financial obligations and margin responsibilities, including requirements that Cuarte make an initial margin payment and all variation margin payments that StoneX may require.  *See id.* at § 2.

### Key Provisions in the Agreement

38.     Under Section 2.4 of the Agreement, StoneX is entitled to calculate, "in its sole discretion," a daily variation margin amount that reflects its views of the risk presented by Cuarte's position.  Cuarte "shall pay such Variation Margin" either the same business day or by noon the next business day, depending on when StoneX makes the demand.  "Business day" is defined in Exhibit A to the Agreement as any weekday where banks are open in New York.  *Id.* at Exhibit A.

39.     Per Section 8.2 of the Agreement, "No waiver by either Party of any one or more defaults by the other Party  . . . shall operate or be construed as a waiver of any other default or defaults."   Additionally, "[a]ny failure or delay by either Party to exercise any right, in whole or in part, will not be construed as a waiver of the right to exercise the same or any other right at any time."  *Id.* at § 8.2

40.     Exhibit A to the Agreement defines an "Event of Default" as:

> The failure of either Party or any Guarantor to make payment as required or perform any obligations (i) under this Agreement or under any Confirmation (excluding a delay in payment that is cured within one (1) Business Day of demand therefor . . . the failure of Counterparty to make payment of Variation Martin with the timeframe required by Section 2.4 shall constitute an immediate Event of Default ***with or without demand*** by [StoneX].

41.     In other words, when the Event of Default is the failure to timely pay Variation Margin as required by Section 2.4, StoneX is entitled to pursue its remedies (including liquidation) immediately, "with or without demand."

42.     Section 5.2 of the Agreement confirms that StoneX, as the Performing Party, has the right to enforce any of its remedies not only under the Agreement, but also all other remedies available at law or in equity and states, *inter alia*, that "[t]he Performing Party may enforce any of its remedies under this agreement . . . successively or concurrently at its option.  All the remedies set forth in this Agreement are in addition to all other remedies available to the Performing Party at law or in equity."  *See* Exhibit A at § 5.2.

43.     Section 5.4 of the Agreement further allows StoneX "in the event of termination and liquidation," to set off any obligation of Cuarte due to StoneX "without prior notice."  *See id.* § 5.4.

**Cuarte's Trading Strategies Become Riskier Over Time**

44.     Starting in 2016, Cuarte initially engaged in ordinary spread trading, through long calls and short puts or combinations of the same, for the purposes of hedging upside risk or the value of long physical inventories.

45.     In or about May 2021, Cuarte hired an external advisor to provide speculative trading strategies in corn, soymeal, Chicago wheat, and Matif wheat.

46.     Even when Cuarte began this trading strategy, the trading volumes were in keeping with Cuarte's physical hedging needs.

47.     By mid-to-late 2021, however, Cuarte began to submit orders that were 3-5 times the size of its typical trading and began trading in Matif wheat, corn, soymeal, and Chicago Wheat.

48.     Cuarte's trading went from 16 or 30 lot trades to between 200 and 800 lots, using swaps and short options.

49.     As the market got more volatile and Cuarte started experiencing losses, its trading advisor began to increase its exposure to risk and double-down on short positions—rolling positions and accumulating losses as the market continued to rise.

50.     Radames Muñoz, Vice President of Trading at StoneX Financial Inc., met with Cuarte in October 2021 and highlighted the risk of these trading patterns.

51.     In response, Cuarte terminated its advisor, but kept on its short positions, apparently hoping the market would fall and, in turn, Cuarte would benefit.

52.     On or about March 1, 2022, Cuarte's positions experienced a decline in value.

53.     Because of the value of the account declined, as the result of volatility in the market, StoneX issued a margin call to Cuarte, per the terms of the Agreement.

54.     Specifically, on March 1, 2022, StoneX sent notice to Cuarte which indicated and confirmed that Cuarte needed to add $224,531.22 to maintain its current positions.

55.     Cuarte SL did not meet the margin call or submit funds with which to maintain its positions, via payment of this Variation Margin within the timeframe required by Section 2.4.

56.     At the same time, members of the StoneX team, including Mr. Muñoz, communicated with Cuarte to discuss its financial obligations and the need to wire additional funds in order to maintain its current positions.

57.     On March 2, 2022, StoneX's Variation Margin calculation had increased to $1,736,070.90.  It made a similar demand, which Cuarte again failed to meet.

58.     On March 3, 2022, StoneX's Variation Margin calculation had increased to $3,435,751.03.  It made a similar demand, which Cuarte again failed to meet.

59.     By the end of business on March 4, 2022, the margin call had increased to over $6.1 million with a negative net liquidation value of over $2.7 million.

60.     Cuarte breached the Agreement by failing to meet its financial obligations.

61.     Given the volatility in the market, and Cuarte's positions, Cuarte was required to deposit over $6.12 million or, as noted above, Cuarte could reduce the risk in its positions by self-liquidating, entering into specific risk reducing transactions that would mitigate the risk associated with its positions, or a combination of the same.

62.     Cuarte failed to do so and did not meet its margin obligations per the terms of the Agreement.

63.     In the days that followed, there were multiple communications between Mr. Muñoz and either Carmen Arroyos, an authorized trader, or Jorge Samper Rivas, the Director General of Curate SL, about the need for Cuarte to take action or wire additional funds.

64.     Cuarte recognized its financial obligations, but decided to submit only $1.5 million towards the margin call which was over $6.1 million. This payment was not sufficient to constitute timely payment of Variation Margin.

65.     Seven days after failing to meet its first margin call, Cuarte failed to submit funds sufficient to meet the margin call and its financial obligations under the Agreement.

66.     By the end of March 7, 2022, the margin deficit was $5,053,168.34 with a net liquidating value of $3,642,104.69.

67.     Cuarte had breached the Agreement and failed to meet its financial obligations.

68.     Cuarte was notified and informed that StoneX was liquidating for Cuarte's failure to meet its obligations under the Agreement.

**StoneX Mitigates Its Damages**

69.     On March 7, 2022, several days after the initial margin call issued to Cuarte, positions were liquidated.

70.     However, the liquidation did not cover StoneX's total losses, leaving $3,721,265.15 due and owing to StoneX at that time.

71.     On March 25, 2022, Mr. Muñoz and Mr. Samper spoke on the phone, during which time Mr. Samper said that he knew some of the issues regarding the lack of payment were his fault, but he was not sure how much Cuarte still owed StoneX.

72.     On March 29, 2022, StoneX issued a written demand letter to Cuarte via email, demanding payment of the remaining balance due and owing to StoneX.

73.     The next day, Cuarte responded by now claiming that StoneX did not have the right to liquidate without first obtaining Cuarte's permission, despite the language in the Agreement permitting StoneX to do precisely that under Section 2.4, as well as Exhibit A to the Agreement, defining "Event of Default."  *See* Exhibit A at §§2.4 and Exhibit A.

74.     Cuarte also claimed that it did not send funds to meet the margin call because banks were closed because of a holiday.

75.     One of Cuarte's positions expired on April 19, 2022, leaving one of its sub-accounts with a positive balance of $850,830.

76.     Pursuant to its right of setoff under Section 5.4 of the Agreement, StoneX applied this amount to Cuarte's outstanding debt, leaving an outstanding debit of approximately $2,869,170 due and owing to StoneX from Cuarte, excluding interest, attorneys' fees and costs.

77.     Cuarte has failed to make any further payments to StoneX.

## COUNT I (Breach of Contract)

78.     StoneX incorporates paragraphs 1 through 77, above, as if alleged fully here.

79.     The Agreement constitutes a valid and enforceable contract between StoneX and Cuarte.

80.     As set forth above, pursuant to Section 2.4 of the Agreement, Cuarte agreed to make daily Variation Margin payments to StoneX to secure and maintain Cuarte's positions.

81.     Cuarte breached Section 2.4 of the Agreement by failing to make the required margin payments to StoneX within the time required by the Agreement, or at any other time.

82.     As set forth above, each of Cuarte's failures to timely pay Variation Margin separately constituted an Event of Default as defined in Exhibit A to the Agreement.

83.     In other words, Cuarte was in default under the terms of the Agreement by failing to meet its initial margin call of March 1, 2022, and each day in which Cuarte failed to timely pay Variation Margin was a new Event of Default.

84.     StoneX has made repeated demands on Curate to perform its obligations under the Agreement, but Cuarte has failed to do so.

85.     Cuarte's breaches of the Agreement resulted, directly and proximately, in damages and losses to StoneX of at least $2,869,170, excluding interest, attorneys' fees and costs.

86.     StoneX performed all of its obligations to Cuarte under the Agreement.

87.     StoneX is also entitled to an award of reasonable attorneys' fees and interest pursuant to the Agreement.

## COUNT II (Declaratory Judgment)

88.     StoneX incorporates paragraphs 1 through 87, above, as if alleged fully here.

89.     As set forth above, Cuarte violated the terms of the Agreement with respect to § 2.4 regarding Variation Margin.

90.     Cuarte claims that it did not make the margin payments because banks were closed because of a holiday or that StoneX had to receive Cuarte's prior consent to liquidate and mitigate damages.

91.     An actual, present and justiciable controversy has arisen between StoneX and Cuarte concerning StoneX's right under the Agreement.

92.     StoneX is entitled to a declaratory judgment declaring the Parties' rights and liabilities, including that: (a) Cuarte violated the Agreement by failing to make variation margin payments; (b) that Cuarte's failure constituted separate events of default on March 1, March 4, and March 7, 2022; (c) that StoneX was authorized or had the right to liquidate and mitigate damages as a result of the defaults on March 7, 2022; and that (d) StoneX was authorized to apply the remaining balance in Cuarte's account to set off its losses as a result of Cuarte's default and breach.

**WHEREFORE**, for the foregoing reasons, StoneX requests that judgment be entered in its favor and against Cuarte follows:

(a)     On Count I, that judgment enter in favor of StoneX and against Cuarte, in the amount of at least $2,869,170 plus pre-judgement interest;

(b)     On Count II, that a judicial declaration issue that Cuarte violated and breached the Agreement; that the violation and breaches by Cuarte constituted more than one event of default; that StoneX was authorized and had the right to liquidate and mitigate damages; and that StoneX was authorized to set off the balance in Cuarte's remaining accounts against the unpaid debt due and owing to StoneX by Cuarte;

(c)     Awarding StoneX its reasonable attorneys' fees, costs and expenses incurred in connection with this action; and

(c)     Awarding such other and further relief as the Court deems just, proper, and equitable.

Dated: April 21, 2022

Respectfully submitted,

By:  /s/ Niraj J. Parekh

Niraj J. Parekh
Julia R. Livingston
BARNES & THORNBURG LLP
390 Madison Avenue 12th Floor
New York, NY 10017
Tel: (646) 746-2000
nparekh@btlaw.com
jlivingston@btlaw.com

- and –

Vincent P. Schmeltz III*
BARNES & THORNBURG LLP
One North Wacker Drive, Suite 4400
Chicago, Illinois 60606
Tel: (312) 357-1313
tschmeltz@btlaw.com

*Attorneys for Plaintiff StoneX Markets LLC
f/k/a INTL FCStone Markets, LLC*

* *pro hac vice* application forthcoming